OPINION
{¶ 1} Defendant-appellant, William A. Hilton, appeals from the April 23, 2002 entry of the Franklin County Court of Common Pleas denying his request for limited unsupervised off-ground privileges. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} On October 8, 1994, appellant shot and killed his father. On October 20, 1994, appellant was indicted for aggravated murder, having a weapon under disability, and unlawful possession of dangerous ordnance. Each count in the indictment included specifications.
 {¶ 3} In a letter to the trial court dated March 17, 1995, Dr. Paul D. Goldstein of NetCare opined that appellant suffered from symptoms of grandiose and paranoid delusions that seriously impaired appellant's ability to realistically understand the proceedings against him. Appellant was clinically assessed as incompetent to stand trial. On March 27, 1995, the trial court found appellant incompetent to stand trial and committed appellant to the Timothy B. Moritz Forensic Unit at the Twin Valley Psychiatric System in Columbus, Ohio ("TBMFU").
 {¶ 4} On February 13, 1996, the trial court determined that appellant was competent to stand trial. On September 18, 1996, appellant appeared before the trial court, with counsel, and waived his right to trial by jury. The trial court found appellant not guilty by reason of insanity, and found by clear and convincing evidence that appellant was mentally ill and was subject to hospitalization or institutionalization. The trial court ordered appellant detained at TBMFU.
 {¶ 5} On December 19, 1996 and August 6, 1997, the trial court ordered appellant's continued commitment at TBMFU. On February 26, 1998, the hospital treatment team of TBMFU filed a written recommendation stating that the least restrictive setting for appellant was a civil mental setting at TBMFU. On April 22, 1998, the trial court conducted a hearing. Based on the evidence before the trial court, the court determined, by clear and convincing evidence, that although appellant's illness was presently in remission, and fairly stable, appellant continued to be a mentally ill person subject to hospitalization. The trial court ordered that appellant be conditionally released to the civil section of TBMFU, Columbus Campus.
 {¶ 6} On September 1, 1998, the hospital treatment team filed a report requesting that the trial court grant appellant level 3 unsupervised on-ground movements and level 4 supervised off-ground movements. On November 13, 1998, the trial court ordered appellant's continued confinement to TBMFU, but granted appellant supervised on-ground movements and supervised off-ground movements in the company of hospital staff or his care manager.
 {¶ 7} On December 6, 2000, the hospital treatment team filed another report requesting that the trial court grant appellant level 3 unsupervised on-ground movements. On January 2, 2001, the trial court ordered appellant's continued commitment to TBMFU, and permitted appellant unsupervised on-ground movements and supervised off-ground movements in the company of hospital staff or his care manager.
 {¶ 8} On March 16, 2002, the hospital treatment team requested a hearing to grant appellant level 5 unsupervised off-ground movement privileges. On April 23, 2002, the trial court denied appellant's request for unsupervised off-ground privileges. It is from that entry that appellant timely appeals, assigning the following as error:
 {¶ 9} "The trial court erred by denying appellant increased movement privileges as a mentally ill person subject to hospitalization absent clear and convincing evidence that increased privileges would represent a threat to public safety or to the safety of any person."
 {¶ 10} Appellant contends that appellee, pursuant to R.C.2945.401(G), failed to prove by clear and convincing evidence that a change in appellant's status to a less restrictive status would represent a threat to the public safety or to the safety of any other person. Appellant argues that the testimony presented by Howard H. Sokolov, M.D., and Jamie Lai, Psy.D., demonstrated that a change in appellant's status would be beneficial and not represent a risk to him or others and, as such, he should have been granted unsupervised off-ground privileges.
 {¶ 11} At the April 23, 2002 hearing, Dr. Sokolov opined that he thought it was safe to let appellant have limited unsupervised off-ground privileges. (Tr. 11.) Although Dr. Sokolov opined that it would be safe for appellant to have a less restrictive status, Dr. Sokolov testified that appellant "maintained a paranoid personality pattern of thinking," mainly that appellant was a suspicious person. (Tr. 6-7.) Dr. Sokolov testified that his concerns rested with appellant's thought patterns and unreasonable expectations. According to Dr. Sokolov's reports, appellant anticipated a career as a professional basketball player, and a large financial settlement from a restaurant chain he sued as a result of biting into a hamburger that allegedly contained a staple. Appellant further referenced a $100,000 life insurance policy that he thought his uncle, his father's brother, had on appellant's life in revenge for his brother's death.
 {¶ 12} In his report dated February 6, 2002, Dr. Sokolov noted that during his evaluations with appellant, appellant indicated that he did not trust his treatment team because appellant saw the team as holding back his movement and he felt that the hospital wanted information from appellant to give to the media. Appellant further accused the staff of racially discriminating against him regarding his privileges. Dr. Sokolov opined that appellant continued to have a paranoid slant to the way he viewed past and present issues, that appellant continued to blame the staff for delaying his privileges, and that he maintained a paranoid personality pattern of thinking.
 {¶ 13} In Dr. Lai's evaluation of appellant, she agreed with Dr. Sokolov that appellant is ready for limited unsupervised off-ground privileges. Dr. Lai testified that appellant was willing to acknowledge that he murdered his father, but that appellant has not worked through his belief about his father being out to harm appellant. (Tr. 15.) A review of Dr. Lai's evaluation revealed that appellant believed that his greatest challenge to overcome, if granted unsupervised off-ground privileges, would be encountering someone who was close to his father, who would become hostile towards appellant. Dr. Lai opined that appellant externalized blame when things did not go his way.
 {¶ 14} R.C. 2945.401(G)(2) provides that the state has the burden of proof:
 {¶ 15} "For a recommendation for a change in the conditions of the commitment to a less restrictive status, to show by clear and convincing evidence that the proposed change represents a threat to public safety or a threat to the safety of any person."
 {¶ 16} R.C. 2945.401(I) provides in pertinent part:
 {¶ 17} "At the conclusion of a hearing * * * regarding a recommendation from the chief clinical officer of a hospital, program, or facility, the trial court may approve, disapprove, or modify the recommendation and shall enter an order accordingly."
 {¶ 18} R.C. 2945.401(I) provides that the trial court has discretion to approve, disapprove, or modify any recommendation made concerning a patient's course of treatment. This court will not disturb a decision of the trial court absent an abuse of discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 19} An abuse of discretion connotes more than an error of judgment; it implies a decision that is arbitrary or capricious, one that is without a reasonable basis or clearly wrong. Pembaur v. Leis (1982),1 Ohio St.3d 89; Wise v. Ohio Motor Vehicle Dealers Bd. (1995),106 Ohio App.3d 562, 565; and In re Ghali (1992), 83 Ohio App.3d 460,466.
 {¶ 20} At the onset, we note that the trial court expressed concerns about appellant's anger towards his father, and appellant's belief that his father was out to harm him. (Tr. 5.) Appellee contends that evidence was presented that appellant posed a threat to public safety or a threat to the safety of any other person if appellant was permitted unsupervised off-ground privileges. Appellee further contends that this evidence was clear and convincing evidence to deny appellant's request for a less restrictive status.
 {¶ 21} We determine that appellee met its burden of proving, by clear and convincing evidence, that appellant's commitment to a less restrictive status represents a threat to public safety or to any person. Appellee presented evidence about appellant's degree of paranoia at the time he murdered his father, and appellant's current paranoid pattern of thinking. Drs. Sokolov and Lai testified that appellant still harbored unrealistic goals and expectations for himself, placed blame on others, had paranoid delusional disorder, and was a suspicious person. Dr. Sokolov admitted that his concern was with appellant's thought patterns. Dr. Lai's evaluation specifically stated that appellant's false belief about his father wanting to hurt him, and appellant's professional basketball aspirations remain fixed, although not to the degree they were in the past. We find that the trial court did not err when it declined to approve the recommendation to grant appellant unsupervised level 5 off-ground privileges. As such, appellant's sole assignment of error is not well-taken and is overruled.
 {¶ 22} Accordingly, we overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
TYACK and BROWN, JJ., concur.